1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SELF,<br><br>                                    Plaintiff,<br><br>v.<br><br>PERSPECTA ENTERPRISE<br>SOLUTIONS, LLC, a Delaware Limited<br>Liability Company,<br><br>                                    Defendant. | Case No.:  21-cv-01230-AJB-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO EXCLUDE EXPERT<br>OPINIONS OF DEBRA REILLY;**<br><br>**(2) GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>**(Doc. Nos. 71, 73)** |

    Presently before the Court are Defendant Perspecta Enterprise Solutions, LLC's ("Perspecta") motion to exclude the expert opinions of expert Debra Reilly, (Doc. No. 71), and Perspecta's motion for summary judgment, (Doc. No. 73). The motions have been fully briefed, (Doc. Nos. 83, 84, 85, 87), and are suitable for determination on the papers and without oral argument in accordance with Local Civil Rule 7.1.d.1. Accordingly, the Court hereby **VACATES** the hearing currently set for **February 23, 2023 at 2:00 p.m.** As set

1

forth below, the Court **GRANTS IN PART AND DENIES IN PART** Perspecta's motion to exclude expert opinions of Debra Reilly, and **GRANTS IN PART AND DENIES IN PART** Perspecta's motion for summary judgment.

## I.   BACKGROUND

### A.   Plaintiff's Role at Perspecta

This is an employment case alleging gender discrimination and wrongful termination, failure to prevent discrimination, gender pay discrimination, and retaliation. Plaintiff argues she was terminated on the basis of her gender, and in retaliation for her complaints to her manager at Perspecta, Brian Hammond. In defense, Perspecta asserts it terminated Plaintiff's employment as part of a reduction in force ("RIF") due to a financial shortfall caused by the COVID-19 pandemic. (Doc. No. 73 at 16.)

In 2005, Plaintiff commenced employment as a project manager with Northrop Grummond, a predecessor entity to Perspecta.[1] (Complaint ("Compl."), Doc. No. 1, ¶ 16.) Plaintiff then held various positions between 2011 and 2018, when Hammond promoted her to a newly created Business Consultant Manager ("BC Manager") position[2] with a nearly 25% salary increase, (Doc. No. 73 at 11, 13), where she was responsible for providing operational and business leadership, interfacing with the County of San Diego (the "County"), and supervising account developers, business analysts, and business consults. (Compl. ¶ 18.) During Plaintiff's time with Perspecta, she received numerous positive performance reviews. (Doc. No. 85 at 10–11.)

As BC Manager, Plaintiff supervised a team of 12 to 15 individuals, including Business Consultants ("BCs") who were responsible for generating leads for new applications within the County account, and Business Analysts ("BAs") who were responsible for working with particular County departments to document their needs

---

[1] Perspecta and its parent company had several predecessor entities and corporate iterations. (Doc. No. 73 at 11 n.1) Peraton acquired Perspecta in May 2021. (*Id.*)

[2] Plaintiff's Complaint states she was promoted to Business Advisory Services Manager in 2016. (Compl. ¶ 18.) Perspecta states this role was also referred to as Consulting Manager or Consulting Services Manager. (Doc. No. 73 at 12.)

requirements. (Doc. No. 73 at 12.) While the BA positions were required under Perspecta's contract with the County and were billed to the County, Plaintiff and the BCs were not billable, but rather were overhead costs for Perspecta. (*Id.*)

### B.    Discrimination Complaints & Internal Investigation

Plaintiff asserts that between 2016 and 2019, she had several discussions with Hammond regarding her missing opportunities for promotions since he allegedly did not post the positions. (Doc. No. 85 at 16.) Plaintiff asserts she then complained on September 24, 2020, regarding Hammond's discrimination, and thereafter, Hammond "cuts her out of communications and meetings, and cancels his 'one on ones' with her." (*Id.* at 18.) Plaintiff contends she then reported Hammond's discrimination to his supervisor, Cathy Varner, when her complaints to Hammond went unresolved. (*Id.* at 17.) At this point, nothing was done to address Plaintiff's complaints. (*Id.*) Then, on January 25, 2021, Hammond informed Plaintiff that her position was being eliminated and that she was being terminated as part of a RIF. (*Id.*) At the same time, Plaintiff was invited to participate in Perspecta's Family First Program, which provides at-risk employees priority consideration for open positions. (Doc. No. 73 at 16–17.) Plaintiff did not express any interest in the program until the afternoon before her release, at which point it was too late for her to be fully onboarded and receive any benefit. (*Id.* at 17.)

On February 2, 2021, roughly one week after Plaintiff was notified that her position was being eliminated, she emailed Human Resources representative Mary Price regarding the discrimination, disparate pay, and retaliation she had been reporting to Hammond and Varner. (Doc. No. 85 at 19.) Plaintiff's emails were forwarded to Employee Relations/EEO Investigator, Manuel Gutierrez, who investigated the allegations under the supervision and direction of in-house counsel. (Doc. No. 73 at 17.) Gutierrez interviewed Plaintiff and 5 of the 17 witnesses identified as potential witnesses of discrimination and retaliation. (Doc. No. 85 at 20.) Additionally, Gutierrez reviewed two spreadsheets (one related to pay and the other an employee survey) and reviewed emails from three people. (*Id.*) Gutierrez testified that he spent less than one hour interviewing, respectively, four of these witnesses.

(Deposition of Manuel Gutierrez, Doc. No. 85-9, at 4–5.) Gutierrez could not recall how long he interviewed Hammond, (*id.* at 5), and stated he did not consider interviewing the remaining 12 identified potential witnesses, (*id.* at 6). Upon conclusion of this investigation, Perspecta proceeded with Plaintiff's release. (Doc. No. 73 at 17.)

### C.    Plaintiff Files Suit

Thereafter, in July 2021, Plaintiff filed the instant Complaint in this Court and brings claims against Perspecta for (1) gender discrimination (disparate treatment) and wrongful termination, (2) failure to prevent discrimination, (3) gender pay discrimination, (4) retaliation and wrongful termination, and (5) unlawful and unfair competition in violation of California Business & Professions Code § 17200, et seq. (Doc. No. 1.)

## II.    MOTION TO EXCLUDE

### A.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007).

Prior to admitting expert testimony, the trial court "must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). The trial court acts as a "gatekeeper" by making a preliminary determination of whether the expert's proposed testimony is not only

relevant but reliable. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). This two-step assessment requires consideration of whether (1) the reasoning or methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether the reasoning or methodology properly can be applied to the facts in issue (the relevance prong). *Daubert*, 509 U.S. at 592–93; *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998).

A district court has broad latitude in deciding how to measure reliability and in making the ultimate reliability determination. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). In essence, the court must determine whether the expert's work product amounts to "good science." *Daubert*, 509 U.S. at 593. In *Daubert*, the Supreme Court outlined factors relevant to the reliability prong, including (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community. *Id.* at 593–94. As later confirmed in *Kumho Tire*, "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141–42.

Under the relevance or "fit" prong, the testimony must be "'relevant to the task at hand,' i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (quoting *Daubert*, 509 U.S. at 597). Relevance requires opinions that would assist the trier of fact in reaching a conclusion necessary to the case. *See Kennedy*, 161 F.3d at 1230. In general, the *Daubert* analysis focuses on the principles and methodology underlying an expert's testimony, not on the expert's ultimate conclusions. *Daubert*, 509 U.S. at 595. However, the Supreme Court has cautioned that "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997). As such, "[a] court may conclude that there is simply too great an analytical gap between the data and

the opinion proffered." *Id.*

**B.    Discussion**

Perspecta moves to exclude the expert opinion testimony of Debra Reilly, J.D. and her reports regarding Perspecta's alleged failure to meet human resources standard practices for conducting investigations into discrimination and retaliation. (Doc. No. 71.) Ms. Reilly's expert report ("Reilly Report") sets forth the following opinions in this case:

1. Employer Perspecta did not investigate Ms. Self's multiple gender/sex discrimination complaints in 2016, 2017, 2018, 2019, and 2020, nor did it adequately investigate her last gender/sex discrimination, gender pay discrimination, and retaliation complaint in 2021. Perspecta's sole investigation, after her final complaint in 2021, did not meet minimum standard practices in the human resources industry due to numerous failures.

2. Employer Perspecta did not comply with its own written policies and procedures regarding hiring, promotion, retention, termination, and equal employment opportunities of its employees. An Employer's failure to follow its own written policies is a strong indicator of a desire or motivation to evade the policies and to treat an employee differently based on one or more protected characteristics.

3. Employer Perspecta's planning and implementation of its February 5, 2921 [sic] Reduction in Force (which laid off Ms. Self) was not in compliance with human resource industry minimum standard practices per SHRM and EEOC guidance.

(Reilly Report, Doc. No. 71-4, at 11, 15, 19.) Perspecta asserts the opinions are inadmissible because they lack factual support and are thus unreliable, are not relevant under Federal Rule of Evidence 401(b), are of limited relevance, risks confusion of issues, may mislead the jury, invades the province of the court, and finally that Ms. Reilly is not qualified to testify. (*Id.* at 7.) Plaintiff responds that Perspecta's motion should be denied

because Ms. Reilly's expert opinions are reliable and based on sufficient facts and data. (Doc. No. 83 at 11.)

### 1.     Ms. Reilly's First Opinion

Perspecta argues Ms. Reilly's first opinion is unreliable because she did not have access to, and thus did not review, Mr. Gutierrez's investigation report or his interview notes. (Doc. No. 71 at 11.) Perspecta therefore asserts Ms. Reilly's supposed basis for this testimony is solely Plaintiff's allegations. (*Id.* at 17.) Plaintiff responds Ms. Reilly was unable to review Perspecta's investigation and findings because it refused to produce them on the grounds of attorney-client privilege, and Judge Berg denied Plaintiff's motion for production. (Doc. No. 83 at 13.) Further, Plaintiff argues that despite this, Ms. Reilly can reliably opine on the Association of Workplace Investigators ("AWI") guiding principles. (*Id.*)

Expert testimony as to proper governance standards is allowed and Plaintiff's expert may testify about Perspecta's deviation from good human resources practices under Rule 702. Perspecta's failure to follow such practices is relevant to Plaintiff's contention that Perspecta's actions were discriminatory, and Ms. Reilly's testimony could assist the jury because the average juror is unlikely to be familiar with human resources management policies and practices.

Additionally, although Ms. Reilly did not have access to Mr. Gutierrez's investigation report or interview notes, and only had access to a rough condensed transcript of Mr. Gutierrez's deposition and exhibits, she reviewed all documents legally available to her. Unlike the expert witnesses in the cases cited by Perspecta, the gaping holes in Ms. Reilly's information is due to Perspecta, rather than due to Plaintiff's or her own fault. For example, in *Hernandez v. City of Vancouver*, No. C04-5539 FDB, 2009 WL 279038, at *5 (W.D. Wash. Feb. 5, 2009), the expert report "consist[ed] of little more than a recitation of Plaintiff's evidence" and wrongfully "conclu[ded] that the evidence demonstrates that Plaintiff was discriminated against." Indeed, the court found the expert's testimony "brings no expertise to this action, but [is] only recapitulation of percipient testimony or

articulation of legal conclusions." *Id.*

Likewise, in *Powell v. Anheuser-Busch Inc.*, CV 09-729-JFW (VBKx), 2012 WL 12953439, at *6 (C.D. Cal. Sept. 24, 2012), the court excluded the plaintiff's expert witness report and testimony because he failed to "sufficiently consider the relevant underlying facts necessary to support his opinions and conclusions, especially in light of his admitted failure to develop the factual record . . . ." Here, Ms. Reilly's expert report does not contain legal conclusions and contains "more than a recitation of Plaintiff's evidence." *Hernandez*, 2009 WL 279038, at *5. Moreover, Ms. Reilly did not fail to consider relevant underlying facts, but was rather legally prevented from reviewing all of the evidence. As such, the Court finds Ms. Reilly's opinions are relevant.

Perspecta next argues Ms. Reilly's first expert opinion should be excluded because it is not relevant. (Doc. No. 71 at 18.) Perspecta specifically argues that its investigation of Plaintiff's internal complaint, which postdates its decision to include her in the RIF, has no relevance to this litigation because Perspecta is not relying on the adequacy of the investigation or advice of counsel in defending Plaintiff's claims. (*Id.*) Perspecta further admits it did not investigate Plaintiff's gender/sex discrimination complaints between 2016 and 2020 but denies Plaintiff made actionable complaints during this period, and asserts Ms. Reilly's opinion does not touch upon when an employer's duty to investigate a complaint arises. (*Id.*) The Court agrees with Plaintiff that the investigation, and failure to investigate, is relevant to Plaintiff's claims for failure to prevent discrimination and retaliation in that Perspecta's alleged "failure to follow [good human resources] practices is relevant to plaintiff's contention that the layoff was a pretext for gender discrimination or retaliation . . . ." *Humphreys v. Regents of Univ. of Cal.*, No. C 04-03808 SI, 2006 WL 1867713, at *2 (N.D. Cal. July 6, 2006). The Court, however, agrees with Perspecta that Ms. Reilly may not testify that Perspecta's failure to comply with good human resources practices is indicative of discrimination. *Id.*

Finally, Perspecta asserts Ms. Reilly's recommended steps to evaluate an inequitable pay claim is unnecessary and invades the province of the Court because these steps reflect

those set forth under the law and as described by the jury instructions. (Doc. No. 71 at 19 (citing CACI 2740–43).) The Court agrees. "[I]nstructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)). Here, Ms. Reilly's recommended steps go beyond "refer[ring] to the law" but indeed "instruct[] the jury as to the applicable law." *Id.* As such, Ms. Reilly may not testify as to the recommended steps to evaluate an inequitable pay claim.

### 2.    Ms. Reilly's Second Opinion

Regarding Ms. Reilly's second opinion, Perspecta first argues it should be excluded because it lacks factual support and is therefore unreliable. (Doc. No. 71 at 19–20.) Specifically, Perspecta asserts the policies Ms. Reilly cites did not go into effect until after the positions she identifies were posted and filled, and that Ms. Reilly's assumption that Perspecta did not post these positions either internally or externally is contradicted by the evidence. (*Id.*) However, Perspecta does not cite to this purported evidence in their brief. (*See generally id.*) Perspecta further responds it does not have prior policies in its possession because no such document exists, and that Plaintiff chose not to seek to compel additional policies from Perspecta's predecessor companies prior to 2018. (Doc. No. 84 at 6 n.3.) However, Brian Hammond, as the Person Most Qualified ("PMQ") for Perspecta, testified that Perspecta's policy on recruiting and hiring practices was in effect before the September 1, 2020 revision date, and that it was his recollection that this policy was substantially the same as prior to September 1, 2020. (Deposition of Brian Hammond as Person Most Qualified ("Hammond PMQ Depo."), Doc. No. 83-5, at 4–6.)

Moreover, Hammond states that when the Applications Manager position on the County account opened in or around August 2018 and January 2021, respectively, the position was posted both internally and externally. (Declaration of Brian Hammond ("Hammond Decl."), Doc. No. 71-7, ¶ 14.) However, when the Operations Manager position opened in or around 2018, he did not recall whether the position was posted internally and/or externally. (*Id.* ¶ 15.) The second time the Operations Manager position

opened in February 2019, Hammond testified he selected Parker Benton without posting this position internally or externally. (Hammond PMQ Depo. at 8; Hammond Decl. ¶¶ 15–16.) When the Operations Manager position opened the third time in August 2021, Hammond states it was posted internally and externally. (Hammond Decl. ¶ 17.) The Court notes that other than Hammond's declaration, there is no evidence of these positions being posted. Thus, the evidence shows Perspecta did not post all positions internally or externally in all instances, and thus the Court finds Ms. Reilly's expert opinion reliable on these grounds.

Next, Perspecta argues Ms. Reilly is not qualified to testify regarding Perspecta's policies and practices and how its conduct violated those policies in respect to Plaintiff because she merely read the policies and complaint. (Doc. No. 71 at 21.) The Court agrees. "[E]xpert testimony regarding whether defendant followed its own policies would not aid the jury." *Malone v. Potter*, CV 07-05530 MMM (FFMx), 2009 WL 10672523, at *5 (C.D. Cal. Feb. 25, 2009). Perspecta's policies do not appear to be overly technical or outside the understanding of a layperson, and as such, the jury can read the policies and determine whether Perspecta followed them without expert testimony. *Id.*; *see Parton v. United Parcel Serv.*, No. 1:02-cv-2008-WSD, 2005 WL 5974445, at *6 (N.D. Ga. Aug. 2, 2005) ("In this case, Quartana's testimony would not aid the trier of fact because the UPS Defendants' disciplinary policies, and the manner in which they are alleged to have deviated from them, are not so complex as to require expert explanation. The documents relied upon by Quartana were written for all employees, not just those in human resources, and the language used is obviously not intended to be technical or contain jargon requiring expert interpretation. Thus, Quartana's testimony offers nothing more than what Plaintiff's counsel can assert in closing arguments, introduce through exhibits, or elicit in the examination of lay witnesses").

### 3.   Ms. Reilly's Third Opinion

Perspecta asserts that "while Ms. Reilly's expertise as to workplace investigations, of which she has conducted thousands, is not contested . . . . [she] has only opined as to the

adequacy of a reduction in force on two other occasions, one of them many years ago." (Doc. No. 71 at 24.)

"[T]he fact that an expert is qualified in a particular field or discipline does not automatically qualify that expert in related disciplines." *United States v. Boyajian*, No. CR 09-933(A) CAS, 2013 WL 4189649, at *13 (C.D. Cal. Aug. 14, 2013). But a lack of specialization "affects the weight of the expert's testimony, not its admissibility." *In re Silicone Gel Breasts Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004). When Ms. Reilly was asked whether she had conducted a workplace investigation specifically related to a RIF or the adequacy of a RIF, she stated she did not know because she does not keep records of the subject matter of her investigations. (Deposition of Debra Reilly ("Reilly Depo."), Doc. No. 71-5, at 20–21.) Ms. Reilly further testified "one is not coming to mind, but that doesn't mean that I didn't [ever testify about a RIF]." (*Id.*) Perspecta has not established that Ms. Reilly's human resources experience is not applicable to RIFs, and as such, the Court finds Ms. Reilly's qualifications are sufficient for her to offer her opinions.

To Perspecta's point that Ms. Reilly's third opinion is unreliable because her opinions are based on mistaken beliefs and facts regarding the number of persons eliminated during the RIF and Perspecta's financial justifications for the RIF, those contentions can adequately be addressed through vigorous cross-examination, and the jury can decide what weight, if any, to accord Ms. Reilly's testimony. Lastly, the Court rejects Perspecta's assertion that Ms. Reilly's opinion that a RIF "should not be undertaken for discriminatory reasons" should be excluded because it is a statement of law. (*See* Doc. No. 71 at 26.) The Court finds this statement of law to be applicable in this matter. However, Perspecta correctly points out that Ms. Reilly cannot offer testimony with regard to a disparate impact here, as Plaintiff does not bring a disparate impact claim.

Based on the foregoing, Perspecta's motion to exclude Ms. Reilly's testimony is **GRANTED IN PART AND DENIED IN PART**.

///

### III.   MOTION FOR SUMMARY JUDGMENT

#### A.   Legal Standard

A court may grant summary judgment when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the nonmoving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the nonmoving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the nonmoving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See*

21-cv-01230-AJB-MSB

*Estate of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks, alterations, and citation omitted).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1159 (C.D. Cal. 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Further, a motion for summary judgment may not be defeated by evidence that is "merely colorable, or is not significantly probative . . . ." *See Anderson*, 477 U.S. at 249–50 (citations omitted); *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006) (same). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

### B. Discussion

#### 1. Evidentiary Objections

For a motion for summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial . . . ." *See Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). "Rule 56[(c)] requires only that evidence 'would be admissible', not that it presently be admissible." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006). Thus, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez-Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (same). And while a court will consider a party's evidentiary objections to a motion for summary judgment, "[o]bjections such as lack of foundation, speculation, hearsay and relevance are duplicative of the summary judgment standard itself." *All Star*

*Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146 L BLM, 2014 WL 1286561, at *16–17 (S.D. Cal. Mar. 31, 2014) (citing *Burch*, 433 F. Supp. 2d at 1119–20).

Perspecta lodges evidentiary objections to Plaintiff's evidence submitted in support of its opposition to Perspecta's motion for summary judgment. (Doc. No. 87 at 2 n.1.) Each of Perspecta's objections is based upon lack of foundation and/or personal knowledge and hearsay. Moreover, insofar as the Court's decision does not depend on certain disputed evidence in this order, the Court need not reach those remaining evidentiary objections. As such, the Court **OVERRULES** Perspecta's objections.

### 2.    Plaintiff's Gender Discrimination and Wrongful Termination Claims

"To establish a prima facie case, a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.' . . . 'The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas* [*v. Green*, 411 U.S. 792 (1973)] . . . , or by more direct evidence of discriminatory intent.'" *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). "Generally, the plaintiff must provide evidence that: (1) [s]he was a member of a protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive," *e.g.*, similarly-situated individuals outside her protected class were treated more favorably. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000). A plaintiff also "must prove by a preponderance of the evidence that there was a 'causal connection' between [her] protected status and the adverse employment decision." *Mixon v. Fair Emp. & Hous. Comm'n*, 192 Cal. App. 3d 1306, 1319 (1987). Here, there is no doubt that Plaintiff is a member of a protected class as a female, that she was performing competently in her position, and that she suffered an adverse employment action.

Courts apply rules regarding the allocation of burdens presented in *McDonnell*

*Douglas* to determine whether the employer has treated similarly situated people differently because of sex. *See Dawson v. Entek Intl.*, 630 F.3d 928, 934–35 (9th Cir. 2011); *Gaines v. SBC Commc'ns, Inc.*, No. 204CV2297MCEGGH, 2006 WL 548032, at *4 (E.D. Cal. Mar. 3, 2006) ("*McDonnell Douglas* burden-shifting . . . is equally germane to FEHA claims."). The *McDonnell Douglas* test follows the following three steps: (1) plaintiff must establish a prima facie case of discrimination; (2) the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its employment decision; and (3) plaintiff must then demonstrate that the employer's alleged reason is a pretext for a discriminatory motive. *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), as amended, 784 F.2d 1407 (1986). State and federal caselaw is essentially used interchangeably by the courts for such analyses. *See, e.g.*, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996) ("California courts interpreting FEHA often look to federal cases. . . . Therefore, we too rely on such cases where helpful.")

Perspecta seeks summary judgment on the gender discrimination claim on the grounds that Plaintiff has failed to meet her prima facie burden and establish that gender played any factor in the decision to terminate her employment. (Doc. No. 73 at 18.) Perspecta further argues that even if Plaintiff meets her initial burden and establishes a prima facie case for gender discrimination, Perspecta had legitimate business reasons for Plaintiff's termination. (*Id.* at 25.)

### i.      The Same Actor Rule

Perspecta further contends Plaintiff cannot establish a prima facie claim for gender discrimination because Hammond gave Plaintiff annual raises, created the BC Manager role specifically for her and promoted her into it, and positioned Plaintiff to be the face of Perspecta with one of its valuable clients, the County. (Doc. No. 73 at 19–20.) Perspecta relies upon *Day*, which noted that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Day*, 930 F. Supp. 2d at 1161 (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir.

1996) ("We therefore hold that where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive.")). Indeed, the Ninth Circuit has enunciated a 'same-actor rule,' which dictates that "an employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs." *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005) (citing *Bradley*, 104 F.3d at 270).

Although *Bradley* phrased the same-actor rule in terms of "hiring and firing," its logic applies to cases such as this one, for successive promotion opportunities. *See Coghlan*, 413 F.3d at 1096 ("it is irrational to infer discriminatory animus by a decision-maker in taking an adverse employment action against an employee when that decision-maker previously hired or otherwise favored the employee."); *Hartsel v. Keys*, 87 F.3d 795, 804 n.9 (6th Cir. 1996) (applying the same-actor inference where the decision maker had not hired the plaintiff but had previously promoted her). When the same actor rule applies, a plaintiff must present an "extraordinarily strong showing of discrimination" in order to overcome the rule and defeat summary judgment." *See Coghlan*, 413 F.3d at 1096; *Bradley*, 104 F.3d at 270 (when the same actor is responsible for both the adverse act, as well as the favorable act, a strong inference arises that the adverse action was not taken with discriminatory intentions).

Here, although Hammond was not in charge of hiring Plaintiff, he promoted Plaintiff in 2018, and, roughly three years later, decided to terminate her. Thus, the same-actor rule must apply. Additionally, courts have found a period of three years qualifies as a "short period of time." *See Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000). The Court must therefore apply the heightened requirements under the same-actor doctrine.

### ii.   Plaintiff's Showing of Discrimination

In support of her gender discrimination allegation, Plaintiff asserts Hammond had a history of giving Plaintiff "the cold shoulder for much of the time he supervised her[;]" referring to Plaintiff and her team of BCs, consisting primarily of women as "Little BCs";

frequently passing Plaintiff and other women over for promotion; and skipping the formal interview process for men by ignoring Perspecta's hiring and transfer policies.[3] (Compl. ¶¶ 21–23.) For example, Plaintiff argues that when the Applications Manager position opened in 2018, Hammond did not post the position but rather hired Gary Lomayesva. (Declaration of Amber Eck, Doc. No. 85-1, ¶ 3 ("Defendant did not produce in discovery any job postings for the position of Applications Manager . . . in the summer of 2018, when Mr. Hammond selected Gary Lomayesva for the position."); Declaration of Kathleen Self ("Self Decl. II"), Doc. No. 85-30, ¶ 10.) Perspecta disputes this, stating Plaintiff and Terlecki were ignorant of the posting and that even if it was not posted, there was no policy in effect requiring such a posting. (Doc. No. 87 at 3 n.4.) Additionally, Perspecta admits it did not post a job opening for Operations Manager in November 2019, but rather, Hammond selected Parker Benton, a man, without giving anyone else an opportunity to apply. (Doc. No. 73 at 22.) Perspecta asserts Benton was selected without inviting applications from others because (1) the contract allowed only 24 hours to designate a replacement, who thereafter had to be approved by the County; (2) Benton had already received County approval in conjunction with his prior role; and (3) Hammond believed Benton was "the only real contender for the position" because Benton worked directly under the previous Operations Manager. (*Id.*) Shortly thereafter, Plaintiff asserts she informed Hammond that she wished to apply the next time a manager position opened. (Doc. No. 85 at 13.)

Thereafter, in June or July 2020, Hammond selected Evan Arapostathis to be Account Manager of the San Diego County Retirement Association ("SDCERA") without posting the position. (Doc. Nos. 73 at 20, 22 n.46; 85 at 16.) Arapostathis was selected despite Perpecta's Employee Transfer Policy which explicitly requires that "employees

---

[3] To this point, there is a genuine dispute of material fact as to whether Perspecta had such policies in place at the time. (*Compare* Hammond PMQ Depo. at 3 (stating Perspecta's hiring and recruiting practices were substantially the same before the 9/1/2020 revision date) *with* Doc. No. 87 at 3 (Perspecta argues Hammond's recollection "as best he could recall" is insufficient to show violations of specific provisions within policies).)

must remain in their current role for a minimum of 12 months" and "must meet all performance expectations" to be eligible for transfer. (Doc. Nos. 85 at 16; 85-13 §§ 2.1.1–2.) At the time, Arapostathis had been with Perspecta for less than 10 months and was allegedly not meeting performance expectations. (Doc. No. 85 at 16.) Moreover, Arapostathis started as a BC under Plaintiff and was allegedly struggling in his role as BC. (*Id.* at 14–15.) Perspecta argues Arapostathis was placed in this role temporarily and was not accompanied by a change in title or pay, and that Plaintiff mistakenly assumes it was a promotion. (Doc. No. 73 at 20–21.) Perspecta further asserts Arapostathis was moved in part to place him away from Plaintiff's team, as Hammond felt the relationship between Plaintiff and Arapostathis had deteriorated. (*Id.* at 21.) Perspecta alleges that later, the position was opened up for applicants and Hammond initially selected Chelsa Barkely, a female, for the position, who was later replaced by Cindi Gedney, another female. (*Id.*) Thereafter, Varner recruited Julie Waddell, another female, on August 30, 2021. (*Id.* at 23.) Although women were hired and/or promoted at this time, there is still evidence to create a triable dispute on Plaintiff's gender discrimination claims. *See Matsumoto-Herrera v. Cont'l Cas. Co.*, Case No. 14-cv-03626-VC, 2015 WL 5092520, at *1–2 (N.D. Cal. Aug. 27, 2015).

On January 8, 2021, Hammond then announced Lomayesva was retiring and that his position would open in late January 2021. Because Plaintiff trained Lomayesva on several of his job duties, occasionally did his job, and was familiar with the County account, she asserts Hammond should have considered her for this position. (Doc. No. 85 at 17.) Plaintiff contends she told Hammond she wanted the job, but was told not to apply because she would not get the position. (Self Decl. II ¶ 26.) Though both Plaintiff and Tina Terlecki were qualified for this job, Hammond selected a man, Ronny Barr, for the position. (Doc. No. 85 at 17.) Based on the foregoing, Plaintiff has established that there are material facts in dispute on motive.

### iii.   Articulated Legitimate Nondiscriminatory Reason

Once Plaintiff has established a prima facie case of employment discrimination, the

burden then shifts to Perspecta to articulate a legitimate, non-discriminatory reason for its employment decision. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). Perspecta argues it has articulated a non-discriminatory reason for its employment decision, namely, that the COVID-19 pandemic necessitated eliminating Plaintiff's position due to financial hardship. Accordingly, Perspecta has met its burden of articulating a nondiscriminatory reason for its employment decision.

### iv.   Plaintiff's Argument of Pretext

As a preliminary matter, the Court must begin its analysis with the strong inference that Perspecta's actions were non-discriminatory, and that Plaintiff can only overcome that inference by presenting extremely strong evidence of discrimination. *Coghlan*, 413 F.3d at 1097–98.

First, Plaintiff disputes Perspecta's articulation of a nondiscriminatory reason for its employment decision, arguing Perspecta has not provided any documents showing they either assessed the financial need for eliminating her position or the financial impact that firing her would have on Perspecta. (Doc. No. 85 at 29.) Furthermore, Plaintiff has presented a genuine dispute of material fact as to whether Perspecta's reason for termination was pretextual. Plaintiff alleges her position was not eliminated, but that Perspecta changed the title and assigned Eric Luetters and Cindi Gedney to take over her duties. (Doc. No. 85 at 18.) Additionally, of the eight managers who were kept in the RIF and who had their salaries paid by Perspecta, six were men and only two were women. (*Id.*) Perspecta notes this particular RIF terminated the employment of seven employees, with Plaintiff being the only female terminated. (Doc. No. 73 at 16.) Moreover, Plaintiff contends that one of the remaining women chose to stop working with Hammond a few months later due to his discrimination.[4] (Declaration of Tina Terlecki, Doc. No. 85-31,

---

[4] Perspecta objects to ¶ 29 of Tina Terlecki's Declaration regarding Jojo Donetti on the basis that this statement lacks personal knowledge and/or foundation and constitutes inadmissible hearsay. (Doc. No. 87 at 2 n.1.) The Court agrees and thus **SUSTAINS** Perspecta's objection as to Tina Terlecki's Declaration ¶ 29.

¶ 28.) Plaintiff also asserts Perspecta conducted a previous RIF in June 2020, where each employee was evaluated with respect to four "competencies" which evaluated their effectiveness in performing different key aspects of their jobs, and the employees selected for termination were the bottom performers across various teams. (Doc. Nos. 85 at 30; 85-18 at 2.) Plaintiff contends these procedures were not followed when she was chosen for the RIF in February 2021. (Doc. No. 85 at 30.) Plaintiff also asserts that Perspecta identified Plaintiff's RIF as a "RIF-Single Layoff." (Doc. Nos. 85 at 30; 85-24 at 2.)

Perspecta argues Plaintiff has failed to identify a fact tending to show that Perspecta's projected budgetary shortfall is pretext, and that Plaintiff was one of 28 individuals released as part of a RIF in the months following the onset of the pandemic. (Doc. No. 87 at 5.) Perspecta further asserts that Plaintiff's reliance on policies not in effect at the time should be disregarded, and that Plaintiff has failed to raise a triable issue that Perspecta did not indeed eliminate her position. (*Id.* at 6–7.) However, these are material factual disputes that must be decided by the trier of fact. The Court also notes that while Plaintiff has not presented much evidence in this case, Perspecta has been less than complete in the evidence it offers and has been more conclusory than convincing, leaving questions of fact that preclude granting summary judgment.

Accordingly, the Court **DENIES** summary judgment on Plaintiff's disparate treatment and wrongful termination claims.

### 3.   Failure to Prevent Discrimination

Plaintiff's claim for failure to prevent discrimination is derivative of her discrimination claim. Because Plaintiff's disparate treatment claim will survive this summary judgment motion, the argument that Perspecta should be rewarded summary judgment on the basis that the disparate treatment claims would be dismissed are moot. Accordingly, the Court **DENIES** summary judgment on Plaintiff's claim for failure to prevent discrimination.

### 4.   Plaintiff's Retaliation Claim

To state a prima facie case for retaliation, plaintiff must show (1) she engaged in

protected activity, (2) she was subjected to an adverse employment action, and (3) a causal link between the protected activity and adverse action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1050–51 (2005). "[C]laims for retaliation under . . . FEHA . . . are analyzed under the *McDonnell Douglas* burden-shifting framework." *Leland v. City & Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008) (citations omitted). On summary judgment, "once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Yanowithz*, 36 Cal. 4th at 1042 (citing *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68 (2000)). "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Id.* (citing *Morgan*, 88 Cal. App. 4th at 687).

Here, there are disputes of material fact from which a factfinder could reasonably infer that the adverse action alleged by Plaintiff were taken by Perspecta in response to Plaintiff's protected activity. Plaintiff asserts she complained of Hammond's discrimination on September 23, 2020, and her position was eliminated four months later, on January 25, 2021. (Doc. No. 85 at 18.) Moreover, Perspecta has not provided authority from the Ninth Circuit that causation cannot be inferred from a four-month delay between the protected activity and an adverse employment action. Further, Perspecta has not provided authority for its position that a plaintiff cannot establish a retaliation claim where the person promoted also had subsequent EEO activity. Perspecta may present these facts to the jury, but drawing all reasonable inferences in Plaintiff's favor, Plaintiff has established a prima facie case of retaliation. Because the record contains sufficient evidence to create a genuine issue of material fact regarding the credibility of the alleged reasons for eliminating Plaintiff's position, the Court denies Perspecta's motion for summary judgment on Plaintiff's retaliation claim. As previously discussed above, there is also a genuine dispute of material fact as to whether Perspecta had a legitimate non-discriminatory reason for including Plaintiff in the RIF. *See Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("[T]he plaintiff in an employment discrimination

action need produce very little evidence in order to overcome an employer's motion for summary judgment."). Accordingly, the Court **DENIES** summary judgment on Plaintiff's claim for retaliation.

### 5.    Plaintiff's Gender Pay Discrimination Claim

Plaintiff contends she suffered pay discrimination because she earned between $25,000 and $50,000 less than similarly situated male managers, though they performed substantially similar work under similar work conditions. (Compl. ¶ 29.) When comparing her role to that of Applications Manager Gary Lomayesva, Plaintiff contends she earned between $49,520 and $65,000 less per year. (Doc. No. 85 at 13.)

Perspecta argues Plaintiff cannot meet her prima facie burden because Plaintiff's solely identified comparator, that of Applications Manager held by Gary Lomayesva, is not substantially equal to the BC Manager position held by Plaintiff. (Doc. No. 73 at 32.) Specifically, Perspecta asserts the general subject matter and job duties of the two positions are vastly different because Plaintiff's position had no accountability for revenue, margin, or delivery of services and did not set employee salaries, unlike that of Applications Manager, and the number of supervised individuals greatly differed. (*Id.*) Perspecta contends the Applications Manager is responsible for leading the Applications team, being accountable for revenue, expense, margin, staffing, delivery of services, and working with the County technology office to deliver a product. (Doc. No. 73 at 32.) The Applications Manager also routinely supervises between 150 and 200 people. (*Id.*) Additionally, Perspecta asserts this position carries more financial risk because the Applications team is instrumental in delivering against Perspecta's $40 million forecast on the County account. (*Id.* at 33.)

Plaintiff asserts she and her comparator performed a "common core" of tasks and did substantially equal work, as both positions required (1) good communication skills; (2) the ability to "build relationships;" (3) the ability to lead their team; (4) writing and preparing presentations and written materials; (5) understanding the objectives of the role; and (6) developing business or capitalizing on deliverables. (Doc. No. 85 at 33 (citing

22

Hammond PMQ Depo. at 14–15).) Moreover, while the Applications Manager supervised between 150 to 200 people, only about eight of those were direct reports. (Hammond PMQ Depo. at 16.) Hammond further stated the "factors that justif[ied] the pay differential between Kathleen Self and Gary Lomayesva as applications manager are the level of responsibility and the financial risk" and the number of staff involved. (*Id.*)

The Court finds Plaintiff's argument unconvincing because the one man she compares herself to has a different title and position from Plaintiff. Moreover, Plaintiff provides no information regarding whether he performed the same common core of tasks and under similar work conditions to Plaintiff, other than vaguely stating they both required "good communication skills" and "the ability to build relationships." In opposing summary judgment, Plaintiff must do more than speculate that they performed the same work. For this reason, Plaintiff has provided no evidence supporting her assertion that Applications Manager Gary Lomayesva is a comparable employee. For these reasons, the Court **GRANTS** summary judgment in favor of Perspecta on Plaintiff's claim for gender pay discrimination.

### 6.    Plaintiff's Violation of the UCL Claim

A claim based on a violation of the UCL "borrows violations of other laws and treats these violations, when committed pursuant to a business activity, as unlawful practices independently actionable under Section 17200 *et seq.* and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 383 (1992). In this case, Plaintiff's UCL claim is based entirely on her claims alleging violations of FEHA. Because Plaintiff's FEHA claims survive summary judgment with exception of her gender pay discrimination claim, Plaintiff's claim for violation of the UCL also survives as a matter of law. Accordingly, the Court **DENIES** summary judgment on Plaintiff's fifth cause of action for violation of the UCL.

## IV.   CONCLUSION

Based on the foregoing, the Court:

1.    **GRANTS IN PART AND DENIES IN PART** Perspecta's motion to

21-cv-01230-AJB-MSB

1   exclude expert opinions of Debra Reilly, (Doc. No. 71); and

2        **2.**     **GRANTS IN PART AND DENIES IN PART** Perspecta's motion for

3   summary judgment, (Doc. No. 73).

4

5        **IT IS SO ORDERED.**

6   Dated:  February 15, 2023

7                               Hon. Anthony J. Battaglia

8                               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21-cv-01230-AJB-MSB